UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SAINT PAUL COMMODITIES, LLC, a      )
Minnesota limited liability company,      )
                                          )
          Plaintiff,                      )        CIVIL ACTION NO.
                                          )
VS.                                       )        3:11-CV-0037-G
                                          )
CRYSTAL CREEK CATTLE COMPANY,      )
a Texas corporation, ET AL.,              )
                                          )
          Defendants.                     )

## MEMORANDUM OPINION AND ORDER

Before the court are the motions of the defendants Crystal Creek Cattle

Company ("Crystal Creek"), Jeffrey Bertrand ("Bertrand"), Chad Dunston

("Dunston"), SDB Capital, Inc. ("SDB"), and DB Fleet, LLC ("DB Fleet")

(collectively, "the defendants"), to dismiss the plaintiff's complaint for failure to state

a claim upon which relief may be granted on the grounds of *res judicata* and for failure

to join a necessary party.[1]  For the reasons set forth below, the motions are denied.

---

[1]      The defendants filed three identical motions to dismiss.  Defendants
Crystal Creek Cattle Company's and Chad Dunston's 12(b)(6) and 12(b)(7) Motions
(continued...)

## I. BACKGROUND

The plaintiff Saint Paul Commodities, LLC ("plaintiff"), a Minnesota limited liability company, buys and sells reclaimed cooking oils and other restaurant waste products, including a product commonly known as "Yellow Grease." Second Amended Complaint ("Complaint") (docket entry 45) ¶¶ 2, 10.

DB Fleet, a Texas limited liability company, purchases and resells unprocessed, reclaimed Yellow Grease in high volumes. *Id*. ¶¶ 7, 11. DB Fleet also processes Yellow Grease into biofuel products for resale in low volumes. *Id*. ¶ 11.

Crystal Creek is a Texas corporation with its principal place of business in Dallas, Texas. *Id*. ¶ 4.

In 1998, SDB was incorporated in Texas by Bertrand. *Id*. ¶ 6. In 2002, the Texas Secretary of State revoked SDB's corporate existence. *Id*.

Bertrand and Dunston are Texas citizens, and each own a fifty percent interest in DB Fleet. *Id*. ¶¶ 3, 5. Bertrand is the registered agent of SDB Capital. *Id.* ¶ 6. Dunston is the registered agent and majority shareholder of Crystal Creek Cattle Company. *Id.* ¶ 4, 5.

---

[1](...continued)
to Dismiss ("Motion") (docket entry 34), Defendants SDB Capital, Inc. and Jeffrey Bertrand's 12(b)(6) and 12(b)(7) Motions to Dismiss ("SDB Motion") (docket entry 47), and Defendant DB Fleet's 12(b)(6) Motion to Dismiss Second Amended Complaint ("DB Fleet Motion") (docket entry 50). For the purposes of this order, the court primarily will refer to the first such motion filed by Crystal Creek and Chad Dunston on February 23, 2012 ("Motion").

In 2007, the plaintiff entered into a five year Master Supply Agreement ("agreement")  with DB Fleet to supply weekly shipments of Yellow Grease to DB Fleet.  *Id*. ¶ 12.  From early 2008 through March 2009, the plaintiff supplied DB Fleet with Yellow Grease.  *Id*. ¶ 13.  The plaintiff then terminated the agreement due to DB Fleet's nonpayment of $541,511.60, in violation of the terms of the agreement.  *Id*. ¶¶ 12-14.

A.  Prior Litigation Between Parties

On March 30, 2009, the plaintiff filed a complaint against DB Fleet in the United States District Court for the Northern District of Texas, Dallas Division, for breach of contract, unjust enrichment, and *quantum valebant* for violation of the terms of the agreement.[2]  *Id*. ¶ 15; *see also* omplaint, Cause Number 3:09-CV-0582-L (docket entry 1).  On April 24, 2009, DB Fleet asserted a counterclaim against the plaintiff for fraud.  *See* Original Answer and Counterclaim, Cause Number 3:09-CV-0582-L (docket entry 6).  On June 4, 2010, the Honorable Sam A. Lindsay granted summary judgment for the plaintiff and entered a judgment in the amount of $541,511.60 plus interest.  *Id*. ¶ 17.  Specifically, Judge Lindsay ruled as follows.

> [T]here is no genuine issue of material fact for the trier of fact to consider with respect to any of Plaintiff's claims and Defendant's counterclaims.  It is undisputed that DB Fleet owes an unpaid principal balance of $541,511.60 under the terms of the Agreement and has no legally sufficient basis for withholding such payment.  St. Paul is accordingly

---

[2]      Cause Number 3:09-CV-0582-L.

> entitled to judgment as a matter of law, and the court
> **grants** Plaintiff's Motion for Summary Judgment. DB
> Fleet's counterclaims are **dismissed with prejudice**. The
> court will accordingly enter judgment in the amount of
> $541,511.60 for Plaintiff on the breach of contract claim,
> plus interest accruing from the date of termination for
> nonpayment, March 1, 2009, at the contractual rate of
> 5.25 percent.

Memorandum Opinion and Order at 7-8 (emphasis in the original), Cause Number

3:09-CV-0582-L (docket entry 26).

The plaintiff contends that to date DB Fleet has not made any payments to

satisfy that judgment. Complaint ¶ 18. As of December 10, 2010, the payment due,

including interest, was $577,281.86. *Id*. ¶ 17.

## B.  The Instant Case

On January 6, 2011, the plaintiff commenced this action against the

defendants alleging that the defendants engaged in fraudulent activities "with the

intent to induce Plaintiff to continue to deliver Yellow Grease for which Plaintiff

would not be paid, to injure Plaintiff and put DB Fleet's assets out of the reach of

Plaintiff." *Id*. ¶ 58. Specifically, the plaintiff claims, Bertrand and Dunston used two

companies in which they held an interest, SDB and Crystal Creek, to move funds out

of DB Fleet in anticipation of litigation and for the purpose of putting those funds

out of the plaintiff's reach. *See generally* Complaint. As part of plaintiff's post-

judgment discovery in the prior litigation, for example, it learned that in October

2008, while DB Fleet had outstanding invoices owed to the plaintiff, the defendants distributed $146,000 to themselves. *Id.* ¶¶ 38, 43.

Further discovery showed that the defendants disbursed an additional $111,541 to themselves and their other companies while they still owed money to the plaintiff. *Id.* ¶¶ 44, 49, 54. At that same time, the defendants informed the plaintiff that they were doing everything possible to repay outstanding debts. *Id.* ¶¶ 34, 42-43, 46-47. These communications included Bertrand telling the plaintiff on November 21, 2008 in an email "God knows, I'm going to do EVERYTHING I can not to hurt you." (*Id.* ¶ 42) and on December 3, 2008, "If I tell you I am, I AM GOOD for it!" *Id.* ¶ 47.

In this action, the plaintiff brings claims of fraudulent transfer, in violation of the Texas Uniform Fraudulent Transfer Act, TEX. BUS. & COM. CODE ANN. § 24.001, *et seq.*, civil and criminal fraud, violations of the Texas Civil Liability Act, TEX. BUS. & COM. CODE ANN. § 134.001, *et seq.*, fraudulent concealment, civil conspiracy, unjust enrichment, and constructive trust. *See generally* Complaint. Additionally, the plaintiff contends that DB Fleet's limited liability shield should be disregarded and thus Bertrand, Dunston, and Crystal Creek held liable for DB Fleet's debt. *Id.* ¶ 77. All of the claims, with the exception of unjust enrichment, are new in this, the second action. The defendants move to dismiss the claims against them in this case for failure to state a claim, arguing that the instant action is barred by the doctrine of *res*

*judicata* because the new claims arise out of the same transaction as the prior

litigation.  Motion ¶ 1.

## II.  ANALYSIS

### A.  Standard for Determination under Rule 12(b)(6)

FED. R. CIV. P. 12(b)(6) authorizes dismissal of a complaint "for failure to state

a claim upon which relief can be granted."  A motion under Rule 12(b)(6) should be

granted only if it appears beyond doubt that the plaintiff could prove no set of facts

in support of its claim that would entitle it to relief.  *Conley v. Gibson*, 355 U.S. 41,

45-46 (1957); *Leffall v. Dallas Independent School District*, 28 F.3d 521, 524 (5th Cir.

1994) (citations omitted).

The motion to dismiss for failure to state a claim is viewed with disfavor and is

rarely granted.  *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677

F.2d 1045, 1050 (5th Cir. 1982) (quoting WRIGHT & MILLER, FEDERAL PRACTICE

AND PROCEDURE § 1357), *cert. denied*, 459 U.S. 1105 (1983)).  Granting such a

motion "is a 'precarious disposition with a high mortality rate.'" *Id.* (quoting *Barber v.

Motor Vessel "Blue Cat,"* 372 F.2d 626, 627 (5th Cir. 1967)).

Before dismissal is granted, the court must accept all well-pleaded facts as true

and view them in the light most favorable to the non-movant.  *Capital Parks, Inc. v.

Southeastern Advertising and Sales System, Inc.*, 30 F.3d 627, 629 (5th Cir. 1994)

(citation omitted); *Norman v. Apache Corporation*, 19 F.3d 1017, 1021 (5th Cir. 1994)

(citations omitted); *Chrissy F. by Medley v. Mississippi Department of Public Welfare*, 925 F.2d 844, 846 (5th Cir. 1991).

## B. *Res Judicata*

The defendants argue that the plaintiff is barred from bringing new claims by the doctrine of *res judicata*.[3] Motion at 1.  In a diversity action, for purposes of claim preclusion, the state law standard for *res judicata* is applied.  *Semtek International Incorporated v. Lockheed Martin Corporation*, 531 U.S. 497, 508 (2001).  According to Texas law, a plaintiff's claim is barred by *res judicata* if it has been or should have been litigated in a prior suit.  *Barr v. Resolution Trust Corporation*, 837 S.W.2d 627, 628 (Tex. 1992).  To invoke *res judicata*, the defendants must show that there has been (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) between the same parties or those in privity with them, and (3) that the second action is "based on the same claims as were raised or could have been raised in the first action."  *Amstadt v. United States Brass Corporation*, 919 S.W.2d 644, 652 (Tex. 1996).  The party asserting a *res judicata* defense has the burden of proving those

---

[3]     While the plaintiff is correct that *res judicata* is typically raised as an affirmative defense at trial, Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss Under FED. R. CIV. P. 12(b)(6) and 12(b)(7) at 5-6 ("Plaintiff's Response") (docket entry 37), that rule is not absolute.  The plaintiff cites at least two instances in which *res judicata* may be raised via Rule 12(b)(6).  *Id.*  When all relevant facts are in the record and are uncontroverted, the court may consider whether an affirmative defense warranting dismissal appears on the face of the plaintiff's complaint.  See, *e.g.*, *Kansa Reinsurance Company, Ltd. v. Congressional Mortgage Corporation of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994).

elements.  *Travelers Insurance Company v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

In this case, the first two requirements of the test are not at issue.[4]

Texas applies the transactional approach in determining whether the claim in a

subsequent suit could have been litigated in a prior suit.  *Citizens Insurance Company of*

*America v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007).  In doing so the court weighs

"'such considerations as whether the facts are related in time, space, origin, or

motivation, whether they form a convenient trial unit, and whether their treatment as

a trial unit conforms to the parties' expectations or business understanding or usage.'"

*Barr*, 837 S.W.2d at 631(*quoting* RESTATEMENT (SECOND) OF JUDGMENTS § 24(2)

(1982)).  The mere fact that it was technically possible for a plaintiff to bring a

specific claim in a prior suit is not sufficient to bar that claim under *res judicata*.

Rather, the court should look at the factual context of both claims to see whether

"through the exercise of diligence, [it] could have been litigated in a prior suit."  *Id.*

## C.  Application

In this case, the defendants argue that the plaintiff should have brought its

claims as part of the prior suit.  Motion at 7.  The events giving rise to the plaintiff's

claims in this case had already transpired by the time the plaintiff initiated its first

---

[4]	In its response, the plaintiff contends that the defendants have failed to
show that they are in privity for the purpose of a *res judicata* claim.  Plaintiff's
Response at 11-13.  However, the factual allegations of the complaint are sufficient to
show that Dunston and Bertrand are in privity with DB Fleet.  See, *e.g.*, Complaint
¶¶ 2-7.

action.  Specifically, to the extent that the plaintiff has cited specific dates, the transfers and payments to the defendants out of DB Fleet's accounts occurred from October 3, 2008 to December 31, 2008, while the plaintiff's first complaint was not filed until March 30, 2009.  Complaint ¶¶ 15, 38-40, 44-45, 49.  Likewise, the communications between the parties -- which the plaintiff alleges were fraudulent misrepresentations by the defendants -- occurred from October 2008 to December 2008.  Complaint ¶¶ 42-43, 46-47.  Because the transfers occurred prior to the original suit, the defendants argue, the plaintiff's claims for fraud, civil theft, and unjust enrichment should have been brought as part of that suit.  Defendants Crystal Creek Cattle Company's and Chad Dunston's Reply in Support of 12(b)(6) and 12(b)(7) Motions to Dismiss ("Defendants' Reply") at 3 (docket entry 39).  That argument is based on the general *res judicata* rule requiring a plaintiff to bring any related claims as part of the same suit, a policy that serves to "expedite justice by putting an end to litigation and to preserve the sanctity of judgments."  *Abbott Laboratories v. Gravis*, 470 S.W.2d 639, 642 (Tex. 1971).  This rule is fair to plaintiffs since "[d]iscovery should put a claimant on notice of any need for alternative pleading."  *Barr*, 837 S.W.2d at 631.

     The plaintiff contends that *res judicata* does not apply to the instant case because the plaintiff was not able to discover the defendants' allegedly fraudulent acts until after the prior suit, when it conducted post-judgment discovery.  Plaintiff's

Response at 17.  Generally, courts will not permit pre-judgment discovery of a party's financial condition unless that condition is relevant to a claim or defense at issue.[5] See, *e.g.*, *Sierrapine v. Refiner Products Manufacturing, Inc.*, 275 F.R.D. 604, 609-10 (E.D. Cal. 2011); *Lincoln Electric Company v. MPM Technologies, Inc.*, No. 1:08-CV-2853, 2009 WL 2413625, at *3 (N.D. Ohio Aug. 5, 2009) (concluding that defendant's financial records were not relevant to resolving a breach of contract action and thus were not discoverable); *Mack Boring & Parts Company v. Novis Marine, Ltd.*, No. 06-2692, 2008 WL 5136955, at *3 (D. N.J. Dec. 5, 2008)(concluding that a "garden variety breach of contract action" did not entitle the plaintiff to financial discovery).

At issue is whether the plaintiff was or should have been aware of the defendants' actions so as to raise the fraud claims as part of the prior suit.  Courts must make that determination "pragmatically" by looking not just as whether the claims arose from the same underlying event, but whether the facts supporting each claim are related in "time, space, origin, or motivation. . . ."  *Barr*, 837 S.W.2d at 631.  The plaintiff's prior suit was for breach of contract; it in no way alleged fraudulent or malicious conduct on DB Fleet's part.  Breach of contract and fraud are

---

[5]     The defendants do not address the plaintiff's contention that rules against financial discovery barred the plaintiff from discovering the transactions before the prior suit.  The defendants state only that the plaintiff "offers no legitimate reason why it could not have brought the claims at issue in the first suit." Defendants' Reply at 8.  This is simply not true; a legitimate reason has been offered.

two distinct claims with markedly different elements.  In this case, those claims are supported by different facts, discovered at different times, and spurred by different motivations.[6]  Despite arising from the same business transaction, the two sets of claims are not so similar so as to bar the second suit under *res judicata*.  For example, the defendants maintain that the plaintiff's civil theft claim should be barred because it "is exactly the issue that was litigated in the [prior] litigation -- whether DB Fleet owed Plaintiff for the Yellow Grease that was delivered to it."  Defendants' Reply at 2.  It is true that DB Fleet owing money to the plaintiff is a shared element of both the plaintiff's prior breach of contract claim and its civil theft claim in the present case.  However, a civil theft claim has additional elements that are distinct from a breach of contract claim.  The Texas Civil Theft Liability Act provides that a defendant is liable to the plaintiff for damages resulting from a theft, as defined by the Texas Penal Code §§ 31.03-31.04. TEX. CIV. PRAC. & REM. CODE §§ 134.002-134.003.  The Texas theft statute provides that it is an offense to "unlawfully appropriate[] property with intent to deprive the owner of property."  TEX. PENAL CODE ANN. § 31.03(a).  "Appropriate" is defined as bringing about the transfer of title, *see id.* § 31.01(4), which allegedly occurred when the plaintiff delivered the Yellow Grease to the defendants.  "Appropriation of property is unlawful if it is

---

[6]        The plaintiff's original suit for breach of contract sought only remedial damages.  In this case, the plaintiff is seeking punitive damages based on the defendants' malicious conduct.  Complaint ¶¶ 73-75.

without the owner's effective consent." *Id.* § 31.03(b)(1). "Consent is not effective if induced by deception or coercion." *Id*. § 31.01(3)(A). For purposes of the theft statute, "deception" includes "promising performance that is likely to affect the judgment of another in the transaction and that the actor ***does not intend to perform*** or knows will not be performed." *Id*. § 31.01(1)(E) (emphasis added). Thus, civil theft includes the element of intent, which is not present in a breach of contract claim. Here, the plaintiff has pleaded sufficient facts to support its allegation that the defendants promised performance while intending not to perform. See, *e.g.*, Complaint ¶¶ 32, 34, 58. The plaintiff likewise has shown that evidence of that intent was not discoverable until after the judgment was issued in the prior suit. Consequently, the civil theft claim is not barred by *res judicata*. The other claims in this case (*e.g.*, fraudulent transfer, fraud, fraudulent concealment, and civil conspiracy) likewise contain elements which could not have been alleged without the evidence gathered during post-judgment discovery.

Under the case law relied on by the plaintiff, pre-judgment discovery of the defendants' financial condition and transactions with each other was not allowable in the plaintiff's prior suit. See *Sierrapine*, 275 F.R.D. at 609-10. Consequently, the evidence of the transfers -- which the plaintiff now alleges were fraudulent -- could not have been discovered earlier, notwithstanding the broad scope of discovery authorized by Federal Rule of Civil Procedure 26. The plaintiff, even exercising the

reasonable diligence required by *Barr*, could not have brought its current claims as part of the prior case.  The defendants have failed to show that the plaintiff's new claims are sufficiently related in origin to those previously litigated.  As a result, *res judicata* does not bar the claims in this suit.

### III.  CONCLUSION

For the reasons stated above, the defendants' Rule 12(b)(6) motions are

**DENIED**.[7]

**SO ORDERED.**

August 1, 2012.

_C. Joe Fish_____

**A. JOE FISH**
**Senior United States District Judge**

---

[7]     The defendants' Rule 12(b)(7) motions to dismiss for failure to join a required party are contingent on DB Fleet's inclusion in the suit being barred by *res judicata*.  Motion at 9.  Since *res judicata* does not apply in this case, that argument fails, and the defendants' Rule 12(b)(7) motions are accordingly **DENIED**.